UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

LYNDEN BRENNEN JOHNSON, A29-815-640,

                    Petitioner,

          -v-                              13-CV-992-JTC

ERIC H. HOLDER, Attorney General of the
United States;

MICHAEL PHILIPS, Field Office Director for
Detention and
Removal, Buffalo Field Office,
Bureau of Immigration and Customs Enforcement;

Department of Homeland Security; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

                    Respondents.

———————————————————

## INTRODUCTION

Petitioner Lynden Brennen Johnson, an alien in the custody of the United States

Department of Homeland Security, Immigration and Customs Enforcement (collectively,

"DHS"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241

seeking release from detention at the Buffalo Federal Detention Facility in Batavia, New

York,[1] pending the execution of a final immigration order of removal issued against him.

———————————————

[1]The court's docket reflects that on or about January 9, 2014, petitioner sent a letter to the Clerk of the Court indicating that he has been transferred to the Krome Service Processing Center in Miami Florida.  *See* "Remark" entered January 23, 2014; *see also Perkins v. Schult*, 2007 WL 2089685, at *2 n. 2 (N.D.N.Y. July 20, 2007) (transfer of habeas petitioner did not divest district court of jurisdiction to hear and determine petition).

Item 1.  As directed by this court's order entered October 15, 2013 (Item 2), respondent[2] has submitted an answer and return (Item 5), along with an accompanying memorandum of law (Item 6), in opposition to the petition, and petitioner has submitted a reply (Item 7). For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of the Bahamas, entered the United States at Newark, New Jersey, on December 27, 1990, as a B2 non-immigrant visitor for pleasure. *See* Item 5-2 (Exh. A attached to Declaration of DHS Deportation Officer Juanita Payan (Item 5-1)), pp. 8, 22.  His status was adjusted to Lawful Permanent Resident on January 22, 1992, upon approval by the U.S. Immigration and Naturalization Service ("INS") of petitioner's Form I-485 Application to Register Permanent Residence or Adjust Status. *Id.*

DHS records reflect that, while present in the United States, petitioner was convicted of the following criminal offenses:

a. On or about September 16, 1998, petitioner was convicted in the United States District Court for the Southern District of New York of Theft/Embezzlement of U.S. Property (Post Office Embezzlement), in violation of Title 18, United States Code, Section 641.  He was sentenced to a term of probation of 18 months and ordered to pay restitution in the amount of $3,840.

b. On or about May 29, 2012, petitioner was convicted in the Supreme Court, State of New York, Kings County, of Criminal Sexual Act in the 2nd Degree, in violation of New York State Penal Law Section 130.45(1).   He was

---

[2]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility (where petitioner was detained when he filed the petition), as Mr. Tryon is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

> sentenced to a term of incarceration of 18 months, subsequently reduced on re-sentencing to a 1-year term of incarceration.

*Id.* at 8-9, 22.

On August 21, 2012, petitioner was taken into DHS custody upon his release from the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"). *Id.* at 9. He was placed in immigration removal proceedings by a Notice to Appear ("NTA"), served on August 24, 2012, which charged him with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony crime as defined in INA § 101(a)(43)(A) (8 U.S.C. § 1101(a)(43)(A)) (sexual abuse of a minor), and as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(F) (8 U.S.C. § 1101(a)(43)(F)) (a crime of violence for which the term of imprisonment is at least one year); and pursuant to INA § 237(a)(2)(E)(i) (8 U.S.C. § 1227(a)(2)(E)(i)), as an alien who has been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect or child abandonment. *Id.* at 20-22.

On December 13, 2012, an immigration judge ("IJ") ordered petitioner removed from the United States to the Bahamas. *Id.* at 18-19. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on April 10, 2013, the BIA dismissed the appeal. *Id.* at 13-17.

On or about April 16, 2013, DHS sent a presentation packet to the Consulate General of the Bahamas ("Consulate") in New York, New York, requesting that a travel document be issued for petitioner's removal. *Id.* at 25-29. On April 18, 2013, DHS served

petitioner a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States.  *Id.* at 12.  The warning form advised of penalties under INA § 243 (8 U.S.C. § 1253), for conniving or conspiring to prevent or hamper his departure from the United States, and also advised that, pursuant to INA § 241(a)(1)(C) (8 U.S.C. § 1231 a)(1)(C)), a failure to comply or provide sufficient evidence of his inability to comply may result in the extension of the removal period and subject him to further detention.  *Id.*  A notation on the NTA indicates that petitioner refused to sign the form.  *Id.*

On May 7, 2013, petitioner filed a *pro se* petition in the United States Court of Appeals for the Second Circuit seeking review of the BIA's dismissal of his appeal from the IJ's removal order, accompanied by a request for stay of removal.  *See id.* at 30-32 (Docket Sheet, *Johnson v. Holder*, 2d Cir. Dkt. No. 13-1782).  This court's check of the Second Circuit's Public Access to Court Electronic Records ("PACER") service indicates that, as of this writing, the petition for review and request for stay remain pending with the circuit court.

On May 8, 2013, petitioner submitted a request for prosecutorial discretion seeking deferred action with a grant of employment authorization, which was denied by DHS on May 24, 2013.  *Id.* at 5-7.  Petitioner's subsequent requests for reconsideration were likewise denied by DHS.  *Id.* at 2-4.

DHS records reflect that, on May 15, 2013, DHS received a letter from the Bahamian Consulate advising that a travel document will be issued for petitioner's return to the Bahamas.  Item 5-1, ¶ 18.

In July 2013, in accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS conducted a 90-day review of petitioner's custody status, and on July 11, 2013, issued a "Decision to Continue Detention" based upon the totality of available information in his file—in particular, his criminal history showing "wanton disregard for the laws of the United States" and poor conduct resulting in disciplinary segregation while in DHS custody—indicating that he would be a threat to the safety and security of the community if he were to be released from custody.  Item 5-2, p. 9.

Petitioner filed this action on October 1, 2013, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in DHS custody since April 10, 2013, when the Immigration Judge's order of removal became final, *see* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon dismissal of appeal by BIA), is unlawful since it has exceeded the "presumptively reasonable" six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the

United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.  In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (I)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of certain criminal aliens—*i.e.*, aliens

ordered removed due to conviction of an enumerated crime—beyond the expiration of the ninety-day removal period.  *See* INA § 241(a)(6).[3]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States.  *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must

order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on August 21, 2012, upon his release from state custody, for detention pending completion of immigration removal proceedings as authorized by INA § 236.  *See* Item 5-1, ¶ 10.  This detention continued until April 10, 2013, when the BIA dismissed petitioner's appeal.  After the order of removal became final, petitioner's detention was authorized by INA § 241(a), and the removal period commenced.  DHS promptly undertook efforts to secure a travel document for petitioner's removal to the Bahamas.  *See id.* at ¶ 13.  Then, on May 7, 2013, petitioner filed his petition in the Second Circuit for review of the BIA's dismissal of his appeal from the removal order, along with a motion for a stay of removal.  *Id.* at ¶ 15.

Numerous decisions by the federal courts within the Second Circuit have held that the filing of a petition for circuit court review of the final order of removal, accompanied by a motion for stay of removal, triggers the application of a "forbearance policy" recognized by agreement between DHS and the Second Circuit under which DHS has agreed not to effectuate the removal of an alien while he or she has a petition for review pending before the circuit court.  *See, e.g., Persaud v. Holder*, 2011 WL 5326465, at *1 (W.D.N.Y. Nov.

3, 2011) (filing of petition for circuit court review of final order of removal along with motion

for stay of removal triggers "forbearance policy"); *Luna-Aponte v. Holder*, 743 F. Supp. 2d

189, 197 (W.D.N.Y. 2010) (even though circuit court had not "formally" ruled on motion to

stay accompanying petition for review of BIA's dismissal of appeal from removal order,

forbearance policy is "the equivalent of a court-ordered stay of removal"); *Shehnaz v.*

*Ashcroft,* 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (where circuit court had not yet

ruled on alien's requests to stay removal and for review of BIA's order, a stay of removal

was in effect pursuant to Second Circuit forbearance policy); *cf. Abimbola v. Ridge*, 181

F. App'x 97, 99 (2d Cir. 2006) ("consistent pattern" of filing petition for circuit court review

accompanied by motions to stay removal triggered application of Second Circuit's

forbearance policy; petitioner's "self-inflicted wound should not establish grounds for [his]

*Zadvydas* claim") (citing *Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir. 1991)

(petitioner cannot rely on delays resulting from litigation strategy to claim that prolonged

detention violates substantive due process)).

Pursuant to this policy, the removal period which began on April 10, 2013, was

"effectively stayed" as of May 7, 2013, when petitioner filed his petition for review and

motion for stay of removal with the Second Circuit. *Luna-Aponte*, 743 F. Supp. 2d at 190.

Therefore, DHS had less than one month of unencumbered time to obtain the travel

documents necessary for execution of the removal order prior to the filing of the petition

for circuit court review (during which time petitioner's detention was mandatory, *see* INA

§ 241(a)(2)), and cannot resume its efforts until the Second Circuit rules either on the

petition itself or on the pending motion for stay of removal.

Accordingly, because the detention challenged by the habeas petition in this action has been prolonged by petitioner's own pursuit of judicial review of the final order of removal, the duration of his detention cannot be found to constitute a violation of his rights under the due process clause of the Fifth Amendment. *Doherty*, 943 F.2d at 211 (refusing to find eight-year detention unconstitutional where alien's pursuit of judicial and administrative review caused the delay in removal); *Dor v. District Director, INS*, 891 F.2d 997, 1002 (2d Cir. 1989) (same, but with four year detention); *see also Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *3 (W.D.N.Y. Jan. 9, 2009) (denying alien's habeas petition upon finding that alien "elected to file a petition for review and a motion for a stay of removal" which "acted to prevent his removal until the Second Circuit issued its mandate").

Alternatively, considering petitioner's habeas challenge under the due process standards set forth in *Zadvydas*, petitioner must first "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Only if he makes this initial showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut that showing." *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he

can be removed to the Bahamas in the reasonably foreseeable future.  He simply alleges that the Consulate "ha[s] not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued …."  Item 1, ¶ 15.  However, as discussed above, the record reflects that DHS took prompt steps to secure the travel documents following the BIA's dismissal of petitioner's appeal from the IJ's removal order, and that Bahamian authorities have indicated their intent to issue the documents, clearing the way for petitioner's removal upon conclusion of his federal court litigation.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to the Bahamas, indicating no institutional barriers to petitioner's removal.  For example, DHS reports show that in fiscal year ("FY") 2009, a total of 143 aliens were repatriated to the Bahamas; in FY 2010, 107 aliens were repatriated to the Bahamas; and in FY 2011, 134 aliens were repatriated to the Bahamas.  *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Bahamian government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending request for review by the Second Circuit, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to the Bahamas.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See* Item 1, ¶¶ 15,

21, 32, 36.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial

burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his request for circuit court review of the final order of removal to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

-14-

So ordered.

                                              \s\ John T. Curtin
                                              JOHN T. CURTIN
                                              United States District Judge

Dated:   January 29, 2014